**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOSE CAICEDO,                         :
                                       Civil Action No. 03-4203 (FLW)
      Petitioner,        :

      v.                  :   **OPINION**

C.J. DeROSA, WARDEN,                  :

      Respondent.        :

**APPEARANCES:**

| Petitioner pro se | Counsel for Respondent |
|---|---|
| Jose Caicedo | J. Andrew Ruymann |
| #53825-054 | Asst. U.S. Attorney |
| F.C.I. Fort Dix | 402 E. State Street |
| P.O. Box 2000 | Room 430 |
| Fort Dix, NJ 08640 | Trenton, NJ 08608 |

**WOLFSON**, District Judge

    Petitioner Jose Caicedo, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden C.J. DeRosa.

    This Court previously has severed and transferred the claim made in Ground One, and has denied the claim made in Ground Two

---

[1] Section 2241 provides in relevant part:
(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

regarding the calculation of good time credits.  In this Opinion, the Court will address Petitioner's remaining claim, made in Ground Three, that Respondent has deprived him of the right to due process by preventing his consideration for placement within favorable programming within the BOP due to his alien status.

## I.   BACKGROUND

Petitioner arrived in the United States on February 28, 1992, from Columbia, the country of his birth.

Petitioner currently is serving a sentence of 70 months imprisonment imposed pursuant to conviction in the United States District Court for the Southern District of New York on or about February 24, 2003.  Respondent has applied to Petitioner a Public Safety Factor of "Deportable Alien" in light of Petitioner's status as a citizen of Colombia.  Petitioner is not, however, the subject of a removal action by the Bureau of Immigration and Customs Enforcement; nor has the BICE lodged an immigration detainer against Petitioner with the Bureau of Prisons. Petitioner has not challenged his Public Safety Factor through the Bureau of Prisons Administrative Remedy Program.

Here, Petitioner contends that the Respondent has improperly treated him as an alien and deprived him of consideration for placement in certain BOP programming based upon that status.  He alleges that he is a "national" of the United States based upon the facts that he has lived most of his life in the United

States, he has family in this country (including his children), he has paid substantial taxes in this country, and he owes his allegiance to this country.

Respondents answer that (a) this Court should not address Petitioner's claim because he has failed to exhaust his administrative remedies, (b) Petitioner has no basis to challenge his Public Safety Factor, (c) this Court lacks jurisdiction to address the citizenship claim, and (d) Petitioner is not a U.S. national.  Petitioner has not filed a reply.

## II.  ANALYSIS

A.  Exhaustion of Administrative Remedies

Petitioner has not exhausted the administrative remedies[2] available to him to challenge his Public Safety Factor.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a

---

[2] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.

federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959,

4

\*2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Here, there is no dispute regarding the relevant factual record, nor does this matter require application of the agency's particular expertise. Accordingly, the purposes of the exhaustion requirement would not be served by requiring the Petitioner to exhaust his administrative remedies, and this Court will proceed to determine Petitioner's claim on the merits.

B.   The Public Safety Factor Claim

Petitioner's claim that his classification deprives him of liberty without due process, in violation of the Fifth Amendment, must fail. See, e.g., Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) ("We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. ... The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has

no legitimate statutory or constitutional entitlement sufficient to invoke due process."); Sandin v. Conner, 515 U.S. 742, 484 (1996) ("[Liberty interests conferred by government action] will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."). See also Wilks v. Mundt, 25 Fed. Appx. 492, 2002 WL 113837 (8th Cir. Jan 30, 2002) (no liberty interest implicated by Sex Offender PSF).

Petitioner's classification, and resultant ineligibility for certain BOP programming, does not impose an atypical and significant hardship on him.

Moreover, the claim of U.S. nationality upon which Petitioner bases his due process claim is meritless.[3]   To

---

[3]   Title 8 U.S.C. § 1503(a) provides, in pertinent part:

If any person who is within the United States claims a
right or privilege as a national of the United States
and is denied such right or privilege by any department
or independent agency, or official thereof, upon the
ground that he is not a national of the United States,
such person may institute an action under the
provisions of section 2201 of Title 28 against the head
of such department or independent agency for a judgment
declaring him to be a national of the United States,
except that no such action may be instituted in any
case if the issue of such person's status as a national
of the United States (1) arose by reason of, or in
connection with any removal proceeding under the

the extent Petitioner asks this Court to grant him citizenship, this Court lacks jurisdiction to accommodate him.  "There are 'two sources of citizenship, and two only: birth and naturalization.'"  Miller v. Albright, 523 U.S. 420, 423 (1998) (citation omitted).  Petitioner does not allege citizenship status by birth or by completion of the naturalization process.

The Immigration and Nationality Act defines a "national" as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States."  8 U.S.C. § 1101(a)(22).  The Court of Appeals for the Third Circuit has held that, "for one ... who is a citizen of another country, nothing less than citizenship will show 'permanent allegiance to the United States.'"  Salim v. Ashcroft, 350 F.3d 307, 310 (3d Cir. 2003).  As Petitioner does not even allege that he completed the naturalization process, claim, too, must fail.

---

provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding.  ...

Here, Respondent asserts that Petitioner is not the subject of a removal action.  Thus, it would appear that this Court possesses jurisdiction to decide the nationality claim.

III. <u>CONCLUSION</u>

    For the reasons set forth above, the Petition must be denied as to the claim made in Ground Three.  An appropriate order follows.

                                              <u>s/Freda L. Wolfson</u>
                                              Freda L. Wolfson
                                              United States District Judge

Dated:  October 6, 2005